CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
04/18/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:18-cr-00018 |
| v. | MEMORANDUM OPINION |
| ERSY ALEJANDRO HERNANDEZ, *Defendant*. | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Ersy Alejandro Hernandez's ("Hernandez") motions to dismiss the indictment. (Dkts. 30, 37). On August 22, 2018, Hernandez was indicted on one count of illegal reentry in violation of 8 U.S.C. § 1326(a). (Dkt. 1). In his first motion to dismiss the indictment, Hernandez seeks to collaterally attack the underlying deportation order as fundamentally unfair, contending that his waiver of constitutional rights, executed through a stipulation order, was not knowing and voluntary. (Dkt. 30). In his second motion, Hernandez argues that the indictment must be dismissed under *Pereira v. Sessions*, 138 S.Ct. 2105 (2018) because the notice to appear he received did not contain the time and date of his deportation proceeding. (Dkt. 37). For the reasons that follow, Hernandez's first motion will be granted, and his second motion will be denied as moot.

## I. Factual Background

Hernandez first encountered police and was arrested for trafficking methamphetamine on January 12, 2010. (Dkt. 30 at 1). Three days later, Hernandez was arrested and detained by the Department of Homeland Security ("DHS"). (*Id*.). That same day, Hernandez was provided with notice of his rights and indicated he wanted a hearing with an Immigration Judge ("IJ").

1

(Dkt. 30-3). An immigration officer signed a certification of service indicating that she read the notice to Hernandez in Spanish. (*Id.*). While Hernandez was in DHS custody, he was indicted in South Carolina for distribution of methamphetamine. (Dkt. 30 at 1). On February 1, 2011, Hernandez pled guilty to simple possession of methamphetamine and was sentenced to time served. (*Id.*).

Two days after he entered a guilty plea, Hernandez was issued a notice to appear for removal proceedings. (*Id.*). The notice to appear stated that Hernandez was not a citizen of the United States, that he was a native of Honduras, and that he had not legally entered the United States. (Dkt. 30-4). The notice to appear further ordered Hernandez to appear before an IJ "at 146 CCA Road Lumpkin Georgia US 31815 on a date to be set [and] at a time to be set." (*Id.*; dkt. 37-1).

On February 25, 2011, Hernandez signed a stipulation containing numerous statements in both English and Spanish. (Dkt. 30-5). The stipulation included statements indicating that Hernandez understood his right to a hearing before an IJ and to be represented by an attorney or other representative. (*Id.*). The stipulation further stated that Hernandez wished to proceed without an attorney, and that he understood that, by signing the document, he was giving up his right to a hearing, the right to question witnesses or present evidence, and the right to appeal the IJ's decision. (*Id.*). Finally, Hernandez checked a box indicating that the stipulation had been read to him in Spanish. (*Id.*).

On March 3, 2011, an attorney for Immigration and Customs Enforcement ("ICE"), moved for an entry of an order of removal as to Hernandez based on the signed stipulation. (Dkts. 30, 30-6). Four days later, an IJ signed an order stating that "[u]pon consideration of the evidence submitted with the Motion, and based on the respondent's admission of the factual

2

allegations and the concession to the charge[s], the Court finds the respondent removable from the United States as charged." (Dkts. 30, 30-7). On March 28, 2011, Hernandez was removed from the United States. (Dkt. 31-1). Approximately seven years later, on March 23, 2018, Hernandez was arrested in the United States on state charges. (Dkt. 32). While in state custody, Hernandez was encountered by ICE officers. (*Id*.). On August 22, 2018, Hernandez was charged with illegal reentry in violation of 8 U.S.C. § 1326(a). (*Id*.). His state charges remain pending. (*Id*.).

## II. Legal Standard

Criminal defendants may allege defects in indictments in pretrial motions, including "(i) joining two or more offenses in the same count (duplicity); (ii) charging the same offense in more than one count (multiplicity); (iii) lack of specificity; (iv) improper joinder; and (v) failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). *See also United States v. Daniels*, 873 F.2d 272, 274 (4th Cir. 1992) ("An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense."). A reviewing court "should regard all well pleaded facts as true when considering a motion to dismiss an indictment." *United States v. Dove*, 70 F.Supp.2d 634, 636 (W.D. Va. 1999). A court should not dismiss an indictment on the basis of "facts that should" be "developed at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). Rather, motions to dismiss indictments should generally be denied unless "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

Collateral attacks of deportation orders are authorized where, as here, those orders are necessary to establish an element of the charged illegal reentry offense.[1] *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under § 1326(d), a defendant mounting a collateral attack against an underlying deportation order must show that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review"; and (3) entry of the order was "fundamentally unfair." If a "defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *United States v. El Shami,* 434 F.3d 659, 663 (4th Cir. 2005).

### III.  Argument

The Court will address each of Hernandez's motions to dismiss the indictment in turn, beginning with Hernandez's first motion to dismiss seeking to collaterally attack the underlying deportation order.

#### A.  Hernandez's First Motion to Dismiss – § 1326(d) Collateral Attack

Hernandez claims that his waiver of rights was fundamentally unfair because it was not found to be knowing, voluntary, or intelligent, in violation of his Fifth Amendment right to due process of law and that the IJ's failure to make such a finding violated the controlling

---

[1] The elements of illegal reentry under 8 U.S.C. § 1326 are as follows: (1) the defendant "has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding"; and (2) the defendant thereafter "enters, attempts to enter, or is at any time found in the United States" without express advance consent from the Attorney General. 8 U.S.C. § 1326(a). The Fourth Circuit has recognized that a valid "deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

4

regulations. Hernandez further claims that, because the waiver was fundamentally unfair, he was denied judicial review and is excused from the exhaustion requirement. Because Hernandez's arguments regarding exhaustion and judicial review hinge on the issue of fundamental fairness, the Court will first examine whether the waiver was fundamentally unfair.

1. **Fundamental Unfairness**

"To demonstrate fundamental unfairness a defendant must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664. Hernandez claims that his due process rights were violated in two ways. First, Hernandez contends that his waiver was not knowing, voluntary and intelligent "because there was no finding by the IJ that this waiver" met those requirements. (Dkt. 30 at 6–7). Second, Hernandez contends that in failing to make such a finding, the IJ did not meet the requirements of the underlying regulations. (*Id*. at 7). Hernandez claims that he suffered prejudice as a result of both of these alleged deficiencies because, "if [he] had counsel, or appeared before the IJ, he would have been advised about the possibility of voluntary departure. And there is a reasonable probability he would have received it." (*Id*. at 9).

i. **Due Process**

Hernandez claims that his signature on the stipulation was not a valid waiver of his right to due process because the IJ did not make an explicit finding that the waiver was knowing, voluntary, and intelligent. The Government argues that an implicit finding by the IJ is sufficient to comport with due process, and that the IJ made such a finding when he deemed Hernandez removable after "consideration of the evidence submitted with" the motion for deportation. (Dkt. 30-7). The Government's argument is not persuasive.

5

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (internal quotations omitted). "More specifically, due process requires an alien who faces removal be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *El Shami*, 434 F.3d at 665 (alterations and quotations omitted). Additionally, "Congress has recognized [the right to counsel] among the rights stemming from th[is] Fifth Amendment guarantee of due process." *Tawdrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). *See* 8 U.S.C. § 1362 (establishing the right to counsel "in any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings"). However, "defendants can waive fundamental constitutional rights. . ." *United States v. Marin*, 961 F.3d 493, 496 (4th Cir. 1992); *see also United States v. Lopez*, 84 F.Supp.3d 482, 486 (W.D.N.C. Feb. 3, 2015) (noting, in the context of a removal hearing, that "federal courts routinely allow criminal defendants to waive any number of constitutional rights"). Such waivers must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances." *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (internal alterations and quotations omitted).

In the deportation context, 8 U.S.C. § 1229a(d) authorizes the waiver of rights in the form of stipulated orders that "constitute a conclusive determination of the alien's removability from the United States." In furtherance of this authorization, ICE adopted a regulation that allows an IJ to enter an order of deportation based on such a waiver. *See* 8 C.F.R. § 1003.25(b). In relevant part, the regulation states:

> An [IJ] may enter an order of deportation . . . without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the [IJ] must determine that the alien's waiver is voluntary, knowing, and intelligent . . . A

> stipulated order shall constitute a conclusive determination of the alien's deportability or removability from the United States. The Stipulation shall include: . . . A statement that the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently.

8 C.F.R. § 1003.25(b)(6). When considering whether due process was sufficient where a non-citizen signed a stipulated order, other courts have considered the language of the waiver, the characteristics of the defendant, and contractual principles. *See Lopez*, 84 F.Supp.3d at 487. The Court will undertake a similar fact-specific inquiry to determine whether the requirements of due process were met in this case.

At least one court has found that a signed stipulation order comported with due process despite the IJ's failure to explicitly find that the defendant's waiver was knowing and voluntary. *See United States v. Cordova-Soto*, 804 F.3d 714, 720–21 (5th Cir. 2015). In *Cordova-Soto*, the Fifth Circuit held that notice of the charges, information regarding rights, and a signed stipulation was "ample constitutional protection," even where the defendant "correctly contend[ed] that the IJ failed to expressly find that [the defendant's] waiver was voluntary, knowing, and intelligent" as required by the regulation. *Id*. at 720–21. The Fifth Circuit stated that where "the record demonstrated that an INS agent gave [the defendant] notice of the charges against him and that the agent explained to him that he had a right to a hearing to contest the charges," the defendant's waiver comported with due process despite the IJ's failure to make an explicit finding that the waiver was knowing and voluntary. *Id*. (internal citations omitted).

The Fifth Circuit also noted the district court's conclusion that "the record evidence support[ed] an implicit finding that [the defendant's] waiver was knowing and voluntary." *Id*. In upholding that conclusion, the Fifth Circuit specifically noted the district court's findings that (1) the defendant had lived in the United States since she was an infant and spoke fluent English;

7

(2) the waiver was written in plain, "non-legalese" language; (3) the record demonstrated that the immigration officer had explained the provisions in the form and the rights the defendant was waiving; and (4) the IJ's acceptance of the waiver supported "an implicit finding that the IJ determined the waiver was knowing and voluntary." *Id*.

Similarly, at least one district court in the Fourth Circuit has held that a contested stipulation order was signed knowingly and voluntarily where the IJ made an explicit finding to that effect. *See Lopez*, 84 F.Supp.3d at 488. In *Lopez*, the defendant signed a waiver of rights, and an IJ "issued his 'Decision and Order' . . . finding that such waiver was knowing, voluntary, and intelligent, and further concluding that the allegations of the charging document were true based on defendant's waiver." *Id*. at 486. The defendant had been in the United States since the age of five, attained a high school diploma, and taken college level courses while previously incarcerated. *Id*. at 497. Additionally, that court noted that, through the waiver, the defendant represented that he could "unequivocally state that [he had] submitted this Stipulated Request voluntarily, knowingly, and intelligently." *Id*. (internal quotations omitted). After considering the language of the waiver "alongside the characteristics and educational achievement of the defendant, the court [was] convinced that defendant's waiver was valid." *Id*.

By contrast, the Ninth Circuit has found stipulation orders to be in violation of due process despite an IJ's explicit finding that the waiver was knowing, voluntary, and intelligent. *See, e.g., United States v. Gomez*, 757 F.3d 885, 898 (9th Cir. 2014). In *Gomez*, the Ninth Circuit stated that the IJ could not have made such a finding "based on the evidence before him." *Id*. The Court noted that the defendant "did not understand the stipulated proceeding," received an *en masse* reading of the stipulation, and did not receive an individualized explanation from the immigration officer. *Id*. These proceedings were found to have "violated [the defendant's] right

to due process by obtaining an invalid waiver of rights," and did not support the IJ's finding to the contrary. *Id*. Ultimately, the Ninth Circuit found that the defendant had met the requirements of § 1326(d)(1) to collaterally attack the validity of his deportation "on the basis of both his invalid waiver of the right to appeal the deportation order and the IJ's regulatory violation." *Id*.; *see also United States v. Ramos*, 623 F.3d 672, 681 (9th Cir. 2014) (finding that where a defendant had a hearing before an IJ his waiver of rights was nonetheless invalid because the record did not establish that the waiver was knowing or intelligent).

Here, the stipulation was signed three weeks after an immigration officer reported that Hernandez "stated that he w[ould] not sign a Stipulated Removal, and ha[d] requested a hearing before an Immigration Judge." (Dkt. 35-3 at 2). In that same report, the immigration officer recommended that Hernandez be "processed as an I-862 NTA." (*Id*.). I-862 is the standard notice to appear that would result in a hearing before an IJ rather than stipulated removal. (Dkt. 35 at 3 (referencing 8 U.S.C. § 1229(a))). This marked the second time since being in custody that Hernandez requested a hearing before an IJ. (Dkts. 35-2, 35 at 3 (citing a signed *Notification de Derechos*, requesting a hearing with an IJ)). However, three weeks later Hernandez signed a stipulation that was read to him in Spanish. (Dkt. 30-5). Spanish is Hernandez's native language, but he did not check the box on the stipulation form indicating he is capable of reading Spanish. (*Id*.). The stipulation stated: "I have been advised that by signing this Stipulation, I will be giving up the following legal rights and privileges," including "the right to be represented in removal proceedings by an attorney or authorized representative." (*Id*. at 1– 2). The stipulation also stated that Hernandez had been advised of the rights associated with a hearing, and that he would be giving them up. (*Id*. at 2). Additionally, the stipulation indicated that it would "be made part of the record for the [IJ] to review." (*Id*. at 5). A contemporaneous

9

certification stating that an ICE officer had read the document to Hernandez was included with the stipulation. (*Id*. at 7).

The parties dispute whether the stipulation Hernandez signed contained language that the waiver was voluntary, knowing, and intelligent as required by 8 C.F.R. §1003.25(b)(6). The Government argues that this language was included in the portion of the stipulation read to Hernandez, relying on a section in the document that states "I voluntarily, knowingly, and intelligently submit this request for an order of removal, as demonstrated by my initials on each page and my signature." (Dkt. 30-5 at 6). Hernandez argues that this language is contained in subsection 17C and does not apply to him because he checked the box for subsection 17A. (Dkt. 35 at 5). The Government contends that this language applies to each subsection of paragraph 17.

"When considering representations made in a waiver, courts interpret the terms of the waiver in accordance with traditional principles of contract law." *Lopez,* 84 F.Supp at 496 (citing *United States v. Davis*, 714 F.3d 809, 814–15 (4th Cir. 2013)). Where an agreement implicates a defendant's constitutional rights, the courts analyze it "with greater scrutiny than we would apply to a commercial contract," and the Government is held to a "greater degree of responsibility than the defendant . . . for imprecision or ambiguities." *Davis*, 714 F.3d at 814–15 (internal quotations omitted). Here, the stipulation Hernandez signed is facially ambiguous with respect to the formatting of the contested language. The disputed language appears to be attached to subsection 17C, which begins: "I read this Stipulation without assistance because I am capable of reading and understanding Spanish." (Dkt. 30-5 at 5). Hernandez, however, checked only subsection 17A, which states: "This Stipulation was read to me in Spanish, a language that I fully understand." (*Id*. at 6). The Government's only support for the conclusion

that the knowing and voluntary language applies to the entirety of paragraph 17 and was adopted by Hernandez is an immigration officer's sworn statement that he "read this Stipulation to the respondent in its entirety in the Spanish language." (Dkt. 30-5). It is the Government's responsibility to account for ambiguities, *Davis*, 714 F.3d at 814–15, and the immigration officer's statement alone does not persuade the Court that language seemingly attached to a subsection not selected by Hernandez should be construed as something he heard and adopted.

While the stipulation's failure to comport with 8 C.F.R. §1003.25(b)(6) may not alone be sufficient to invalidate the waiver,[2] it undermines the Government's argument that the IJ made an implicit finding that Hernandez's waiver was knowing and voluntary. In *Cordova-Soto*, the defendant spoke fluent English, sought advice from an attorney, and there were no noted deficiencies in the waiver's language. 804 F.3d at 720–22. Under those circumstances, the Fifth Circuit could infer that the IJ made an implicit finding that the defendant's waiver was knowing and voluntary.

Here, by contrast, the IJ granted the motion for a stipulated removal order based solely on "the evidence submitted with the Motion" and "the respondent's admission of the factual allegations and the concession to the charges." (Dkt. 30-7). Unlike the defendant in *Cordova-Soto*, there is no evidence Hernandez has spent a significant amount of time in the United States and no indication that he speaks or understands English. In fact, the record suggests that Hernandez is unable to read Spanish, as he did not check the box on the stipulation form indicating that he is capable of reading Spanish. (Dkt. 30-5). Additionally, there is no evidence that Hernandez received any advice from counsel. Coupled with the waiver's previously-

---

[2] *See Bowens v. N.C. Dept. of Human Resources*, 710 F.2d 1015, 1019 (4th Cir. 1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process.")

11

discussed ambiguities, these facts do not support the conclusion that the IJ made an implicit finding that Hernandez's waiver was knowing and voluntary.

The Fourth Circuit requires, *inter alia*, that a non-citizen facing deportation receive "a fair opportunity to be heard." *El Shami*, 434 F.3d at 665. In 8 U.S.C. § 1362, Congress codified the due process right to counsel "in any removal proceedings before an immigration judge," and a waiver of a due process right must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances." *Iowa*, 541 U.S. at 81 (2004). Accordingly, where there is no knowing, intelligent waiver of due process rights, a non-citizen is not only deprived of his due process right to counsel, but may be stripped of a fair opportunity to be heard. Because the IJ failed to make either an explicit or an implicit determination regarding a knowing and voluntary waiver, the Court must look to the facts of this case to determine whether Hernandez's waiver nonetheless met due process requirements.

The facts here are in stark contrast to those in *Cordova-Soto* as well as *Lopez*, where the defendant had been in the United States since the age of five, was educated, and the IJ explicitly found he had "entered his request voluntarily, knowingly, and intelligently." 84 F.Supp.3d 482, 487. Hernandez's educational and cultural background, the ambiguities of the stipulation, the evidence indicating that Hernandez initially refused the waiver, and the IJ's failure to observe the regulations do not support a finding that Hernandez's waiver was knowing and voluntary. The Court emphasizes that this is a fact-specific inquiry, and one of these elements alone may not be sufficient to demonstrate a violation of due process. However, the record before the Court, coupled with the IJ's regulatory violation, supports a finding that Hernandez has met the requirements of the due process prong of fundamental unfairness. *El Shami*, 434 F.3d at 664. Thus, the Court will turn to the actual prejudice inquiry.

### ii. Prejudice

To "establish fundamental unfairness under § 1326(d)," a defendant "must show that he suffered actual prejudice as a result of the due process violations in the removal proceedings." *United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) (internal emphasis and citations omitted). To meet the actual prejudice requirement, the defendant "must demonstrate 'that, but for the errors complained of, there was a reasonable probability that he would not have been deported.'" *Id*. (quoting *El Shami*, 434 F.3d at 665). "[T]his is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Id*. Here, Hernandez argues that, but for the violation of his due process rights, he would have established his eligibility for relief under 8 U.S.C. § 1229c(a), a provision providing for pre-conclusion voluntary departure. (Dkt. 35 at 6).

Pre-conclusion voluntary departure "allows an alien charged with removability to depart the country voluntarily prior to the completion of removability proceedings, pursuant to 8 U.S.C. § 1229c(a)(1)." *Narine v. Holder*, 559 F.3d 246, 248 n. 1 (4th Cir. 2009). Pursuant to 8 C.F.R. § 1240.26(b)(1)(i), a non-citizen may be granted pre-conclusion voluntary departure if: (1) the request is made "prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;" (2) he makes no additional requests for relief, or withdraws any previous requests; (3) concedes removability; (4) waives appeal of all issues; and (5) has not been convicted of an aggravated felony. "To receive pre-conclusion voluntary departure, an alien need not show good moral character or that he has the financial means to depart." *United States v. Itehua*, No. 3:17-cr-119, 2018 WL 1470250, *2 (E.D. Va. March 26, 2018) (citing *Arguelles-Campos*, 22 I. & N. Dec. 811, 813 (BIA 1999)). Voluntary departure will be at the non-citizen's own expense and is not available if the individual has previously been permitted to depart voluntarily or is not deportable due to participation in terrorist activities. *See* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26(b)(1)(i). Ultimately, the IJ must exercise his discretion in deciding whether to grant pre-conclusion voluntary departure.

*Argeulles-Campos*, 22 I. & N. Dec. at 817. "[D]iscretion may be favorably exercised in the face of adverse factors where there are compensating elements." *Id*.

Hernandez argues that, but for the due process violation, he would have been able to establish his eligibility for pre-conclusion voluntary departure. Hernandez could have easily made a request before or during the master calendar hearing, refrained from making additional requests for relief, conceded his removability, and waived appeal of all issues. Hernandez's conviction of simple possession is not an aggravated felony, and thus there is no evidence that, at the relevant time period, he had any prior convictions that would have made him ineligible for consideration.

Pursuant to 8 C.F.R. § 1240.26(b)(1)(i), Hernandez could have requested pre-conclusion voluntary departure at or before a hearing in front of an IJ. In fact, the notice to appear Hernandez received indicated that if he appeared before an IJ, he would be "advised by the immigration judge . . . of any relief from removal for which [he] appear[ed] to be eligible including the privilege of departure voluntarily." (Dkt. 30-4 at 2). Thus, if not for the stipulation order, Hernandez would have had a hearing in front of an IJ, and, according to the notice to appear, would have been informed of the possibility of voluntary departure. Similarly, had Hernandez had counsel, he likely would have been advised of the opportunity to apply for this relief prior to that hearing. If Hernandez had been aware of, and provided with the opportunity to, apply for pre-conclusion voluntary departure, it is reasonably probable he would have qualified because he meets the foundational requirements set forth in 8 U.S.C. § 1229c(a). *See Itehua*, 2018 WL 1470250, at *4 (noting that if the defendant "had the opportunity to apply for pre-conclusion voluntary departure, he likely would have qualified because he had no aggravated felony convictions and did not pose a threat to national security").

Although the Government has challenged Hernandez's eligibility for post-conclusion departure,[3] the Government has not presented any evidence that successfully disputes Hernandez's contentions regarding his eligibility for pre-conclusion departure. Accordingly, the Court finds that Hernandez has satisfied § 1326(d)'s fundamental unfairness requirement by showing that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664.

2. **Exhaustion and Judicial Review**

Hernandez claims that, because his wavier of rights was invalid and he can make the requisite showing of fundamental unfairness, he necessarily satisfies the remaining requirements of § 1326(d). Specifically, Hernandez contends that he is excused from the exhaustion requirement, arguing that, due to his invalid waiver, he was unaware of the availability of voluntary departure, and thus could not appeal its denial. (Dkt. 30 at 11). Similarly, Hernandez claims the invalid waiver resulted in the denial of judicial review.

An invalid waiver of the right to appeal deprives an alien of judicial review, and similarly, an invalid waiver excuses the alien from exhausting any administrative remedies. *Mendoza Lopez*, 481 U.S. 828, 840; *see also United States v. Ortiz*, 488 F. App'x 717, 718 (4th Cir. 2012). ("Courts have generally held that the exhaustion requirement of § 1326(d)(1) must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal.") (internal quotations, citations, and alterations omitted). "The Supreme Court [has] held that an immigration judge's failure to advise the alien of his right to apply for

---

[3] Post-conclusion voluntary departure requires a greater showing by the defendant. In order to be eligible, the non-citizen must show: (a) physical presence in the United States for at least a year prior to the date of the notice to appear; (b) good moral character for at least five years preceding the application; (c) no convictions of an aggravated felony or criminal activity that would endanger national security; and (d) that he has means to depart the United States. *See* 8 U.S.C. § 1229c. Whether or not Hernandez could meet this burden is immaterial, because the Court finds it is reasonably probable he would have qualified for pre-conclusion departure.

15

[alternative relief] and to ensure that the alien's waiver of his right to appeal the deportation order constituted a complete deprivation of administrative and judicial review within the meaning of section 1326(d)." *El Shami*, 434 F.3d at 664 (citing *Mendoza-Lopez*, 481 U.S. at 840).

Here, the Court has determined that Hernandez's waiver of rights was invalid and fundamentally unfair under § 1326(d). This invalid waiver prevented Hernandez's appearance before an IJ, precluding him from exercising his right to administrative and judicial review. Thus, Hernandez satisfies all three requirements for a collateral attack under § 1326(d), and his "illegal reentry charge must be dismissed as a matter of law." *Id*. at 665. Accordingly, the Court will grant Hernandez's first motion to dismiss the indictment.

### B. Hernandez's Second Motion to Dismiss Indictment

In his second motion to dismiss the indictment, Hernandez contends that the indictment should be dismissed under *Pereira v. Sessions*, 138 S.Ct. 2105 (2018) because the notice to appear he initially received prior to his deportation did not contain the time and date of the removal hearing. (Dkt. 37). Hernandez contends that these supposed deficiencies in the notice to appear mean that subject matter jurisdiction never vested in the immigration court, rendering the entire deportation proceeding void *ab initio*. This Court has previously considered and rejected similar arguments in other illegal reentry cases, and appeals of some of these rulings are presently pending before the Fourth Circuit. *See, e.g., United States v. Ramos-Delcid*, No. 3:18-cr-00020, 2018 WL 5833081, at *3–5 (W.D. Va. Nov. 7, 2018); *United States v. Saravia-Chavez*, 349 F.Supp.3d 526, 531–33 (W.D. Va. 2018). Because the Court will grant

Hernandez's first motion to dismiss the indictment, Hernandez's second motion to dismiss the indictment will be denied as moot.[4]

IV. CONCLUSION

For the foregoing reasons, Hernandez's first motion to dismiss the indictment will be granted. Hernandez's second motion to dismiss the indictment will be denied as moot. An appropriate order will issue.

Entered this 18th day of April, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] Although the Court will deny the second motion to dismiss as moot, it nonetheless notes that even if it accepted Defendant's new arguments in favor of holding that notices to appear issued to non-citizens must contain the time, place, and date of the removal hearing, such a holding would not necessarily have formal subject matter jurisdiction implications for the immigration court. *See, e.g., United States v. Vasquez-Flores*, \_\_ F.Supp.3d \_\_, 2019 WL 332414, at *6 (W.D. Va. 2019); *United States v. Rivera Lopez*, 355 F.Supp.3d 428, 438–39 (E.D. Va. 2018).